Matthew Mellen (SBN: 233350)
Sarah Adelaars (SBN: 281748)
MELLEN LAW FIRM
411 Borel Ave, Suite 230
San Mateo, California 94402
Telephone:      (650) 638-0120
Facsimile:      (650) 638-0125
mellenlaw@yahoo.com

Attorneys for Plaintiff
FELIPE BAGASBAS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE BAGASBAS, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>SPECIALIZED LOAN SERVICING, LLC; and Does 1-50, inclusive,<br><br>       Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>1.  Violation of 11 U.S.C. § 1691(d)(1)<br><br>2.  Violation of 11 U.S.C. § 1691(a)<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.      Plaintiff, FELIPE BAGASBAS, brings this complaint for Defendant's violations of the Equal Credit Opportunity Act (hereafter "ECOA"). In the case at hand, Plaintiff was qualified for an extension of credit, however, was not given the extension of credit based on his race. Furthermore, Defendant took over two years to make a determination on Plaintiff's extension for credit. This lawsuit follows.

## JURISDICTION AND VENUE

2.      This is an action asserting violations of Federal Law. This action is brought in this Court based on federal question jurisdiction. Venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in the City of San Ramon and County of Contra Costa. Therefore, venue is proper in the Northern District Court of California.

3.     This court has personal jurisdiction over the parties as all Defendants engage in business within the State of California.  Defendants' businesses involves providing mortgage loans and related services to consumers in the State of California.

### PARTIES

4.     Plaintiff is an individual who, at all relevant times herein, lives in and owns the property located at 3381 Ashbourne Circle, San Ramon, California 94583.

5.     At all times relevant, Plaintiff is informed, believes, and thereon alleges that Defendant SPECIALIZED LOAN SERVICING, LLC ("SLS") is a diversified financial marketing and/or corporation engaged primarily in residential mortgage banking and/or related business and is the current servicer of Plaintiff's loan.

6.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 50, inclusive, and Plaintiff will amend this complaint to allege such names and capacities at such time as they are ascertained.  Each fictitiously named Defendant is responsible in some manner for the wrongful acts complained of herein.

7.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

### AGENCY ALLEGATIONS

8.     Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of its predecessors-in-interest.  Additionally, each Defendant has passed any

and all liability to its successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

## **STATEMENT OF FACTS**

9.     On or about November 11, 2006, Plaintiff, a man of Filipino origins, purchased the property located at 3831 Ashbourne Circle, San Ramon, California 94583 (the "Property") and executed a loan agreement to secure financing for the purchase in favor of Triton Commercial Capital, Inc.  Thereafter, SLS became the servicer of Plaintiff's loan, on behalf of the beneficiary.

10.     In or around September 2012, Plaintiff submitted a loan modification application to Defendant SLS in an attempt to modify his mortgage loan.  In January 2013, Defendant SLS sent Plaintiff a loan extension agreement.  However, when Plaintiff called Defendant SLS they were unwilling, or unable, to answer Plaintiff's basic questions about the terms of the loan extension agreement, specifically, Defendant was unable to provide the calculations that it used to calculate Plaintiff's payments under the loan extension agreement.   Without a response, he was unable to accept the loan extension agreement offered in January 2013.

11.     In or around the beginning of February 2013, because Defendant was unable to answer his questions about the loan agreement that he was qualified for, Defendant told Plaintiff to submit an entirely new loan modification application, which Plaintiff sent to Defendant SLS and included all of the documents that Defendant SLS had requested in order to begin the review of Plaintiff's loan modification application.  Plaintiff's financial circumstances had not changed from his prior loan modification application submitted in September 2012 which had resulted in a loan extension agreement.

12.     Thereafter, in or around the beginning of March 2013, Defendant SLS acknowledged receipt of Plaintiff's complete loan modification application.

13.     Despite this, Plaintiff did not receive any notification from Defendant of its action on the application until nearly one year later, on or around March 21, 2014.

14.     Further, on or around March 21, 2014, despite the fact that Plaintiff's financial circumstances had not changed since his loan modification application in September 2012 which had resulted in a loan extension agreement, Defendant denied Plaintiff's loan modification

application.  In the denial letter, Defendant also denied Plaintiff for a loan extension agreement by stating that Plaintiff does not have an eligible hardship to qualify for this agreement.

15.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff was qualified for a loan extension agreement in March 2014, as is clear by virtue of Defendant offering him a loan extension agreement in January 2013.   Despite the fact that nothing had changed between January 2013 and March 2014, Defendant denied Plaintiff for the loan extension agreement. Therefore, Plaintiff is informed and believes, and thereon alleges, that Defendant did not provide Plaintiff the extension of credit based solely on Plaintiff's national origin.

**FIRST CAUSE OF ACTION**
**Violation of 11 U.S.C. § 1691(d)(1)**

16.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

17.     Defendant's conduct, as alleged above, constitutes a violation of the Equal Credit Opportunity Act, found at 15 U.S.C. 1691, *et seq.*  Pursuant to that section, specifically to 15 U.S.C. 1691(d)(1), within thirty days of receipt of a credit application, which includes a loan modification application, a creditor must notify the applicant of the action taken on the application. That is, the creditor must either approve or deny the application within thirty days. This section does not specify whether the action taken be adverse or favorable, so the exception for borrowers in default in (d)(6) is not applicable to the thirty-day requirement in (d)(1), as it is in (d)(2).

18.     In February 2013, Plaintiff submitted a completed loan modification application, thereby applying for an extension of credit.  However, the application remained in Defendant's underwriting department until March 2014, when Defendant purported to deny Plaintiff's application.  Prior to this point, Plaintiff did not receive any notifications of the action taken on the application.

19.     Defendant's failure to notify Plaintiff of an answer within thirty days of the receipt of a loan modification application constitutes a violation of section 1691(d)(1) of the Equal Credit Opportunity Act, regardless of Plaintiff's default status.

20.     As a result of Defendant's violations of the Equal Credit Opportunity Act, Plaintiff is entitled to actual damages including, but not limited to, loss of money and property, losses through overcharges, incurred attorneys' fees and costs to save his home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.  Defendant consciously disregarded Plaintiff's rights, deliberately breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing the imposition of punitive damages.

**SECOND CAUSE OF ACTION**
**Violation of 11 U.S.C. § 1691(a)**

21.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

22.     Defendant's conduct constitutes violations of 15 U.S.C. § 1691(a), which provides that a creditor may not discriminate against an individual that applies for credit based on the individual's race or national origin.

23.     In the present case, Plaintiff is an individual of Filipino descent.  Therefore, Plaintiff is part of a protected class under the Equal Credit Opportunity Act.

24.     Plaintiff applied for an extension of credit in February 2013, by completing a completed loan modification application.  Plaintiff was qualified for the extension of credit, as he had received a notification from Defendant in January 2013, to that effect.  However, despite Plaintiff's qualification for a loan modification, Plaintiff was denied the extension of credit based solely on his national origin.

25.     As a result of Defendant's violations of the Equal Credit Opportunity Act, Plaintiff is entitled to actual damages including, but not limited to, loss of money and property, losses through overcharges, incurred attorneys' fees and costs to save his home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.  Defendant consciously disregarded Plaintiff's rights, deliberately

breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing the imposition of punitive damages.

26.

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

WHEREFORE, Plaintiff FELIPE BAGASBAS demands a trial by jury.  Plaintiff prays for a judgment and order against Defendant, as follows:

1. That judgment is entered in Plaintiff's favor and against Defendant, and each of them;

2. For damages, disgorgement, and injunctive relief;

3. For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

4. For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct;

5. For such other and further relief as the Court may deem just and proper.


DATED: September 25, 2014                    Respectfully submitted,

MELLEN LAW FIRM


 _/s/ Sarah Adelaars_____
Sarah Adelaars, Esq.
Attorney for Plaintiff
FELIPE BAGASBAS

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF